**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **FRANK CESPEDES BASULTO** | **CIVIL ACTION NO. 26-3030** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE JAMES D. CAIN, JR.** |
| **MARKWAYNE MULLIN, ET AL.** | **MAG. JUDGE CAROL B. WHITEHURST** |

## REPORT AND RECOMMENDATION

Petitioner Frank Cespedes Basulto,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 5]. For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Cuba. He entered the United States of America on July 25, 2024. [doc. # 5-1, p. 2]. He "was lawfully paroled into the United States on July 24, 2025, through the CBP One parole process." [doc. # 1, p. 2].

---

[1] Petitioner's "A Number" is 244-638-935.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

ICE re-detained Petitioner in May 2026, "following contact with local law enforcement after a traffic stop." [doc. # 1, p. 2].

Petitioner filed this proceeding on August 12, 2026. [doc. # 1]. He claims that the Government is violating his rights to substantive and procedural due process by detaining him without affording him an "individualized review before a neutral adjudicator regarding whether continued detention is justified." [doc. # 1, pp. 6-10]. He adds: "[He] has a pending and bona fide application for adjustment of status under the Cuban Adjustment Act, a lawful avenue through which he may obtain permanent resident status in the United States. Despite this, Respondents continue to detain him while he pursues relief over which USCIS maintains jurisdiction." *Id.* at 10.

On September 9, 2026, an immigration judge ordered Petitioner removed to Cuba. [doc. # 5-4]. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"); his appeal is pending.

Respondents opposed the petition on September 15, 2026. [doc. # 5]. Petitioner filed a reply on September 28, 2026. [doc. # 6].

## Law and Analysis

### I. 8 U.S.C. § 1225 vs. 8 U.S.C. § 1226

The Fifth Circuit Court of Appeals held that aliens who have not been admitted may be detained without bond hearings under 8 U.S.C. § 1225(b)(2)(A)

even when they have been present in the United States for many years. *Buenrostro-Mendez*, 166 F. 4th 494, 502 (5th Cir. 2026). In reaching its conclusion, the court analyzed the meaning of "seeking admission" and "applicants for admission" in 8 U.S.C. § 1225. *Id.* The court concluded that "applicants for admission," which includes all aliens who have not previously been admitted to the United States, are necessarily "seeking admission" and, therefore, subject to mandatory detention under § 1225(b)(2)(A). *Id.*

Here, *Buenrostro-Mendez* governs Petitioner's detention status: he is detained under Section 1225. Under 8 U.S.C. § 1225(b)(1)(B)(ii) (emphasis added), "If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien *shall be detained* for further consideration of the application for asylum." Under Section 1225(b)(1)(B)(iii)(IV) (emphasis added), "Any alien subject to the procedures under this clause *shall be detained* pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." Under section 1225(b)(2)(A) (emphasis added), "Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title."

Plainly, Section 1225 does not authorize release on bond. *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Petitioner is, therefore, not statutorily entitled to bond or a bond hearing.

**II. Due Process**

Petitioner claims that the Due Process Clause entitles him to a bond hearing.

In *Dzheison Ford v. Timothy Ducote, et al*., 3:20-cv-1170, Doc. 19, (W.D. La. Nov. 2, 2020), the district judge opined in pertinent part:

> In *Department of Homeland Security v. Thuraissigiam*, 140 S.Ct. 1959 (2020), a Sri Lankan national was stopped 25 yards after crossing the southern border of the United States. He was detained for expedited removal. An asylum officer rejected his credible fear claim. Thuraissigiam then filed a federal habeas corpus petition in which he, for the first time, asserted a fear of persecution and requested a new opportunity to apply for asylum. In reversing the appellate court, the Supreme Court found the detention did not violate the Due Process Clause. Although not a case of unreasonable detention, the case is important as to Due Process rights for illegal aliens. Citing *Nishimare Ekin v. United States*, 142 U.S. 651, 660 (1892), the Court held that with regard to foreigners who have never been naturalized or acquired any domicile or residence in the United States, "'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'" 140 S. Ct. at 1977.
>
> In *Demore v. Kim*, 538 U.S. 510 (2003), Kim had entered the United States lawfully and had resided in this country for over 10 years before committing a crime, which made him deportable. Like Ford, Kim argued his mandatory detention violated due process when no determination had been made whether he posed a danger to society or a flight risk. Also, like Ford, Kim asked for an individualized bond hearing which was not authorized under the statute. Both the District Court and the Court of Appeals for the Ninth Circuit found the detention without a bond hearing violated Kim's due process rights.

> In reversing the District Court and Ninth Circuit, the Supreme Court held detention during these proceedings did not violate Kim's due process rights.
>
> Also, like Ford, Kim relied on the case of *Zadvydas v. Davis*, 533 U.S. 678 (2001). In *Zadvydas*, two aliens were held pending removal after final order of deportation. However, no country would take them, so their detention continued for years beyond the 90–day removal period of 8 U.S.C. §1231(a). The Supreme Court held that "once removal is no longer reasonably foreseeable, continued detention is not authorized by the statute." *Id*. at 699. The Supreme Court concluded that six months was a presumptively reasonable period of detention, beyond the removal period, to remove aliens ordered deported. *Id*. at 702.
>
> The *Kim* Court held that *Zadvydas* was materially different because the detention of the aliens in *Zadvydas* was "indefinite" and "potentially permanent." Therefore, the correct standard to apply is to determine whether Ford's detention is "indefinite" or "potentially permanent."
>
> Ford's detention is not "indefinite" or "potentially permanent." Ford's detention ends when the removal proceedings end. Ford's focus on "unreasonable detention" is incorrect. As long as Ford's detention is not "indefinite" nor "potentially permanent," Ford's due process rights are not violated. See also *Jennings v. Rodriguez*, 138 S.Ct. 830 (2018).

Here, Petitioner is not constitutionally entitled to a bond hearing. *See Demore*, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process.").[3] As in *Ford*, Petitioner's detention is not indefinite or potentially permanent. On September 9, 2026, an immigration judge

---

[3] *See also Romero v. Tate*, 2026 WL 1067566, at *1 (S.D. Tex. Apr. 20, 2026); *Bekboev v. Vergara,* 2026 WL 1011244, at *1 (S.D. Miss. Apr. 14, 2026); *Mlaih v. Noem*, 2026 WL 787536, at *4 (N.D. Tex. Mar. 19, 2026).

ordered Petitioner removed. Petitioner appealed the removal order to the BIA; his appeal is pending. His appeal is likely extending his detention until the BIA decides his appeal. Petitioner's detention will likely end (i) when his order of removal becomes final (if the BIA affirms the order of removal or dismisses Petitioner's appeal) and the Government removes him or (ii) if the BIA rules in Petitioner's favor.

Accordingly, the Court should deny Petitioner's claim. Petitioner may re-file his claim if his detention becomes indefinite or potentially permanent.

**III. Procedural Due Process**

Petitioner claims that the Government is violating his right to procedural due process. Petitioner's claim, however, does not sound in procedural due process.

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations." *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993). "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner." *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted)). "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due

process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").

Here, Petitioner does not claim that he lacked notice and an opportunity to be heard or respond *before* the Government deprived him of any liberty or property interest. Pre-deprivation notice and an opportunity to be heard are key components of due process. *Loudermill*, 470 U.S. at 546 ("The essential requirements of due process . . . are notice and an opportunity to respond."). Instead, Petitioner primarily claims that the Government has not afforded him a bond hearing. He argues, "Petitioner has now remained incarcerated for more than eight months without any meaningful bond hearing, individualized dangerousness determination, or neutral adjudication as to whether continued detention remains justified." [doc. # 1, p. 8].

Petitioner essentially argues that by failing to provide him a bond hearing, the Government is risking detaining an individual who is not a flight risk or a danger to society. However, as explained above Respondents are statutorily required to detain

him under 8 U.S.C. § 1225. Thus, even if a neutral decisionmaker determined that he was not a flight risk or a danger, Respondents would still detain him.

In *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1, 8 (2003), the statute at issue required all sex offenders to register so that their information could be published. The respondent, a convicted sex offender, argued that the law violated his procedural due process rights by requiring him to register without a hearing as to whether he was "currently dangerous." *Id.* at 6. Rejecting the argument, the Court opined, "Plaintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant *under the statutory scheme*." *Id.* at 8 (emphasis added). Whether the respondent was not dangerous was "of no consequence" under the statute because it required registration of *all* convicted sex offenders. *Id.* at 7.

Here, whether Petitioner is a risk of flight or danger is largely irrelevant to whether the Government must—under relevant statutory and regulatory schemes—detain and remove him.[4] Relevant issues, for example, include his identity,

[4] To be sure, noncitizens detained under 8 U.S.C. § 1225(b) *may* be released on parole for "urgent humanitarian reasons or significant public benefit," if they "present neither a security risk nor a risk of absconding." *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is not completely irrelevant. Here, to the extent Petitioner contends he is entitled to release for urgent humanitarian reasons or for significant public benefit, he had and has the opportunity to present such a contention in his removal proceedings. *If* the Secretary of Homeland Security agreed, *then* Petitioner

citizenship, whether circumstances have changed following any release from detention, whether he was ever admitted or paroled, when he entered this country, whether another country might accept him, and whether he is entitled to asylum or other protection from removal. The Government has provided, and is providing, process after detaining him in the form of a Notice to Appear, the ability to respond to the Government's motions, the opportunity to be heard in a hearing or via motion(s), the opportunity to present evidence, and an appeal. *See Clavijo v. Thompson, et al.*, 2026 WL 923310, at *3 (S.D. Tex. Mar. 26, 2026) ("8 USC § 1225(b)(2)(A), *mandates* detention of those falling within the definition of 'applicants for admission' without regard to any individualized custody determination concerning dangerousness or flight risk. And the Fifth Circuit in *Buenrostro-Mendez* has now determined that such detention lawfully applies to 'applicants for admission' like Petitioner. A hearing as to dangerousness or flight risk is thus irrelevant to the *lawfulness* of his detention under the statute.").

Accordingly, the Government has not violated Petitioner's right to procedural due process. The Court should dismiss this claim.

---

could attempt to demonstrate that he is neither a security risk nor a risk of absconding.

## <u>Recommendation</u>

For reasons above, **IT IS RECOMMENDED** that Petitioner Frank Cespedes Basulto's petition be **DENIED AND DISMISSED WITHOUT PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** ***See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Lafayette, Louisiana, this 19th day of October, 2026.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE